UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CRIMINAL NO. 06-117-DCR

UNITED STATES OF AMERICA                                                         PLAINTIFF

VS:                         RECOMMENDED DISPOSITION OF
                                      MOTION TO SUPPRESS

MICHAEL HODSON, JR.                                                              DEFENDANT

* * * * * * *

Defendant, Michael Hodson, Jr., moves to suppress evidence in this action. *See* DE#17. The Grand Jury indicted Hodson on two counts alleging violations of 18 U.S.C. § 2252(a)(2) and (a)(4)(B). *See* DE#3. Specifically, the indictment charges that Defendant knowingly received and possessed visual depictions involving a minor engaged in sexually explicit conduct. *See id.* The Government relies on evidence recovered, pursuant to a search warrant, from two computers located at Defendant's residence. Defendant moves to suppress this evidence as seized under an invalid warrant.

The Court received briefs, heard argument, and, on the Court's own initiative,[1] conducted an evidentiary hearing on November 30, 2006 in this matter. Detective Jacqualine A. Pickrell, with the Kentucky State Police, testified at the hearing. The Court afforded the Defendant and the United States a full and fair opportunity to present evidence, tender documents, and make argument. Based on the record, and considering the standards and burdens of production and proof applicable

---

[1] The issues presented required testimony from the underlying Affiant concerning the circumstances of warrant issuance, prompting the hearing.

in the suppression context, the Court makes the following recommended findings of fact and conclusions of law.

RECOMMENDED FINDINGS OF FACT
AND CONCLUSIONS OF LAW

1.    According to the warrant application, Det. Juan Passano, with the Passaic County Sheriff's Department, in New Jersey, is a trained internet crimes investigator. On October 7, 2005, Det. Passano, posing as a twelve year old boy under the screen name "kiddlatino12," engaged in an undercover AOL instant message chat with another user identified as "WhopperDaddy." The chat lasted approximately one hour. *See* Application for Search Warrant (attached as Exhibit 1 to Motion to Suppress)("Affidavit").

2.    During the instant message chat, "kiddlatino12" advised that he was twelve years old. "WhopperDaddy" replied that he likes "younger" (arguably, "younger" children) and further explained that he has two sons, ages nine and eleven, that he "loves to see naked." "WhopperDaddy" discussed his homosexuality with "kiddlatino12" and his desire to engage in sexual activity with "kiddlatino12." *See id.*

At some point during the conversation, "WhopperDaddy" revealed that he was forty-one years of age. "Kiddlatino12" suggested that "WhopperDaddy" was old, but "WhopperDaddy" responded that he was in his "prime." "Kiddlatino12" also asked, during the chat, the age of the youngest boy with whom "WhopperDaddy" had engaged in sexual contact. "WhopperDaddy" advised that it was his seven year old nephew.[2] *See id.*

---

[2]

The internet chat between "kiddlatino12" and "WhopperDaddy" apparently involved other revealing comments by "WhopperDaddy," including his willingness to travel to New Jersey for a sexual rendezvous with "kiddlatino12." These additional on-line comments, however, were not described by Det. Pickrell in her Affidavit and application for search warrant. Nor is there any

2

3.      Authorities subsequently subpoenaed AOL to determine the identity of "WhopperDaddy." AOL responded that "WhopperDaddy" is Michael Leroy Hodson, Jr., the Defendant in this matter. AOL records further indicated that Hodson resides at 338 Schultz Heights Drive in Middlesboro, KY 40965. *See id.*

4.      Since it appeared that the perpetrator involved in the instant message chat lived in Kentucky, Det. Passano contacted Det. Pickrell, on October 25, 2005. Det. Passano related to Det. Pickrell the substance of the internet chat connecting Hodson to the "WhopperDaddy" screen name. *See id.*

5.      On January 19, 2006, Det. Pickrell requested information on Hodson from Kentucky State Police Intelligence. KSP Intelligence confirmed that Hodson resides at 338 Schultz Heights Drive in Middlesboro, Kentucky. *See id.*

6.      Det. Pickrell's testimony reflects that, on or about January 25, 2006, she prepared an affidavit in support of a search warrant for Hodson's residence. The foundation for probable cause in Det. Pickrell's Affidavit includes: a) a description of the October 7, 2005 online conversation (as related in ¶ 2, *supra*) between "WhopperDaddy" and a trained internet investigator posing as a twelve year old boy; b) that AOL records connected the "WhopperDaddy" screen name to Michael Leroy Hodson, Jr., residing at 338 Schultz Heights Drive in Middlesboro, Kentucky; and c) that KSP Intelligence confirmed Hodson's address. *See id.*

---

indication that Det. Pickrell verbally discussed this additional information with the judicial officer issuing the warrant. In this context, the Court limits its review of the warrant, for probable cause purposes, to "the four corners of the affidavit." *See United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

A state judicial officer issued the requested warrant on January 26, 2006, and authorities executed the warrant that same day. *See* DE #21 (Search Warrant). A forensic examination of Defendant's seized computer, performed after the January 26th search, yielded sexually explicit images involving minor boys. Those images are the subject of the instant motion to suppress[3] and constitute the basis for the charges against Defendant.

### Staleness

7. Defendant contends that the information relating to the October 7, 2005 online chat became stale during the two and half months before authorities executed the warrant on January 26, 2006. After removing information relating to the online chat on account of staleness, Defendant concludes that the Affidavit plainly fails to establish probable cause.

Information may become stale because "probable cause to search is concerned with the facts relating to a presently existing condition." *See United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)(citations omitted). However, the mere "length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling." *Id*. Rather, the circumstances of each case determine whether information contained in an affidavit is stale. *See Sgro v. United States*, 287 U.S. 206, 210-11, 53 S.Ct. 138, 77 L.Ed.2d 260 (1932).

The Sixth Circuit identifies four factors that are relevant to this determination: the character of the crime; the circumstances of the alleged criminal; the thing to be seized; and the place to be searched. *See United States v. Abboud*, 438 F.3d 554, 572-73 (6th Cir. 2006) (citing *Spikes*, 158 F.3d

---

[3] A party challenging the validity of a warrant bears the burden in making that challenge. *See United States v. Waldrop,* 404 F.3d 365, 368 (5th Cir. 2005). To the extent a *Leon* analysis applies, however, the Government bears the burden of establishing an exception to the exclusionary rule. *See United States v. Robinson,* 336 F.3d 1293, 1297 (11th Cir. 2003).

at 923). Application of these factors, in this case, indicates that the information supporting the warrant was not stale.

The first factor considers whether the crime at issue is a one-time occurrence or an ongoing activity. *See Abboud*, 438 F.3d at 572. "Evidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001). Although the Affidavit in this case describes a single online chat, the *content* of the online conversation shows that Defendant has a past, present, and prospective sexual interest in young children. Defendant stated that he previously had sexual relations with his seven-year-old nephew and enjoys seeing his two minor sons naked. In addition, Defendant expressed his desire to engage in oral sex with "kiddlatino12." This exhibits an active and ongoing sexual interest in minor children. The continuing nature of Defendant's conduct, reflected in the online conversation, supports the conclusion that the information in the Affidavit was not stale. *See Greene*, 250 F.3d at 481; *Abboud*, 438 F.3d at 573.

The second factor addresses whether the suspected criminal is "nomadic" or "entrenched." *See Abboud*, 438 F.3d at 572. Indication that a suspect moves from place to place decreases the probability of finding evidence at a given location over the passage of time. *See id*. at 573. In this case, Defendant resided at 338 Schultz Heights Drive at the time of the online chat *and* when authorities executed the search warrant. Due to the illicit nature of the cited conduct, it is reasonable to infer that Defendant would use the privacy of his home to conduct the online chat and to engage in the illegal activities referenced by "WhopperDaddy" in the online chat, particularly with respect to the speaker's own sons. In addition, the perpetrators of such crimes have a recognized propensity to collect and store materials related to their activities. *See United States v. Riccardi*, 405 F.3d 852,

861 (10th Cir. 2005)("This proposition is not novel in either state or federal court: pedophiles, preferential child molesters and child pornography collectors maintain their materials for significant periods of time."); *United States v. Lamb*, 945 F.Supp. 441, 460 (N.D.N.Y. 1996). As such, authorities would most likely find any remaining evidence of Defendant's suspected crimes at a single location–his residence, which was the targeted location.

The third factor considers whether the nature of the alleged evidence is "perishable," "easily transferable," or "of enduring utility to its holder." *See Abboud*, 438 F.3d at 573. As stated, courts recognize that persons engaged in child pornography or sexual exploitation commonly collect and store materials relating to their crimes for long periods of time. *See Riccardi*, 405 F.3d at 861. Thus, evidence relative to these types of crimes often has an "enduring" quality to the perpetrator. In addition, Defendant conducted the online chat via computer. The technical capability to retrieve even deleted evidence from computer hard drives cuts against staleness.

The final factor considers whether the place identified by the search warrant is a mere criminal forum of convenience or a secure operational base. *See Abboud*, 438 F.3d at 573. There is a greater probability of finding evidence at a location that is "at the heart of the criminal charges." *See id*. at 574. From the information provided in the Affidavit, it is impossible to gauge definitively the extent to which Defendant used his home to engage in the online chat or the activities referenced in that chat. Although the Court cannot determine that Defendant used his residence as a "base" for his illicit activities, the privacy afforded by a home makes it a reasonably likely venue for conduct of this type. Though a weaker factor, the inference in support of conduct at home indicates against a finding of staleness.

In sum, the factors identified by the Sixth Circuit indicate that the information relating to the October 7, 2005 online chat did not become stale during the two and half months before authorities executed the search warrant. Thus, the Court rejects Defendant's argument that the Affidavit fails to establish probable cause due to staleness.[4]

### Nexus to Person and Place

8.      Defendant further contends that the Affidavit lacks probable cause because the information in the Affidavit fails to establish a "nexus" to Defendant or his home computers. In essence, Defendant argues that anyone with Defendant's AOL information could have perpetrated the online conversation from any computer with internet access. Since the precise identity of "WhopperDaddy" and the computer used to conduct the online chat were "unknown," Defendant concludes that authorities lacked probable cause to suspect Defendant and search his home computers.

The Court rejects this argument. It is not necessary for authorities to establish conclusively the facts cited in seeking a warrant. Rather, circumstances that "indicate a *fair probability* that evidence of a crime will be located on the premises of the proposed search" is sufficient to demonstrate probable cause for a search warrant. *See Abboud*, 438 F.3d at 572 (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)(emphasis added).

---

[4] The Court notes that Det. Pickrell explained the delay in pursuit of the warrant by referencing the lag inherent in securing information from AOL or other ISPs. Based on Det. Pickrell's description of ISPs as "overwhelmed" by requests from law enforcement across the country, the delay in this case does not seem unreasonable. Det. Pickrell testified without contradiction that the KSP pursued the matter as a top priority.

7

In this case, the Affidavit establishes, per AOL, that Defendant utilizes the "WhopperDaddy" screen name . It is possible, as Defendant contends, that someone other than Hodson was operating under his screen name, but plainly there is a "fair probability" that Defendant used his own screen name to conduct the illicit online chat. Furthermore, it is reasonable to infer that Defendant would use a computer at his home address to conduct the online chat.

In addition, the content of the online chat demonstrates a "fair probability" that Defendant has an active and present sexual interest in minor children. Based on the sexual conduct described by Defendant and the interest expressed in "seeing" his own children "naked," there is also reason to suspect that at least some inappropriate sexual activity was occurring at Defendant's residence.

For these reasons, the facts and inferences supplied by the Affidavit establish a "fair probability" that Defendant engaged in the illicit online chat and had inappropriate sexual activity with minors. Moreover, the Affidavit demonstrates a "fair probability" that evidence of such crimes would appear at Defendant's residence. *See Abboud*, 438 F.3d at 572 (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). Defendant's argument that there is no "nexus" connecting Defendant and his home computer to the illicit online chat is without merit. The Affidavit rationally ties Defendant to the "WhopperDaddy" identity and rationally ties the "WhopperDaddy" identity to sexual activity directed toward minors. The use of a computer in "WhopperDaddy"'s home, and thus Defendant's home, is a legitimate logical step supported by the Affidavit's content.

**Probable cause to search for child pornography**

9. The warrant application and the warrant itself contain identical paragraphs concerning the items to be searched for and seized by authorities. Det. Pickrell, who drafted both,

testified that she inserted standard language, as to the targeted items, that she typically uses with respect to warrants of this type.

Unfortunately, boilerplate language creates problems in the context of the Fourth Amendment, which calls for a specific analysis of the basis and proper scope of any search and seizure. *See United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996) (recognizing "risk" of reliance on "generalized boilerplate recitations"). The Fourth Amendment requires adequate particularity, and it demands that probable cause extend to all items particularly sought by a warrant. *See United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990)("The particularity rule and the probable cause rules serve a common purpose: to protect privacy by prohibiting a general, exploratory rummaging in a person's belongings.")(citation omitted).

10. Fairly read, the warrant's focus, in this case, is almost *exclusively* a search for and seizure of images of child pornography. The warrant language is a confusing series of modifying phrases and exemplars, peppered with unconventional punctuation, capitalization, and formatting. Distilled, the descriptions center on computer or electronic data involving "sexually explicit reproductions" or "sexually explicit conduct" relative to a child or children. The boilerplate includes stray references to "calculations, schedules, [and] spreadsheets" that have no relevance to the matters at issue.

The Court must address whether the facts presented in the Affidavit establish probable cause to link Defendant to the possession of child pornography. To justify a search, the affidavit must describe circumstances that "indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004).

Plainly, the circumstances in the Affidavit fairly indicate that authorities may find evidence of an illicit online conversation or child molestation at Defendant's residence or on his computer.[5] None of this information, however, *directly* indicates that Defendant's residence or computer likely contains evidence of child pornography. At best, the evidence in the Affidavit connecting Defendant to child pornography is limited and indirect. There is a weak inference that Defendant indulges in child pornography because its visual quality is consistent with Defendant's interest in simply *seeing* his children unclothed. Any additional link between Defendant and child pornography, however, would require an assumption, *by the issuing judicial officer*, that a person suspected of child molestation or an illicit online chat involving a child also possesses child pornography.

The Court finds that the required assumption would not be reasonable, defeating probable cause to search for child pornography in this case. First, the "WhopperDaddy" chat does not, in any way, reference pornographic images. All of the conduct that "WhopperDaddy" referenced involved the actual physical presence of minor children.

Second, the Court is not convinced that evidence of child molestation and illicit online activity *alone*, which is what the warrant application presents, demonstrates probable cause to believe that Defendant possessed child pornography. *See United States v. Adkins*, 169 Fed. Appx. 961, 967 (6th Cir. 2006)("Standing alone, a high incidence of child molestation by persons convicted of child pornography crimes may not demonstrate that a child molester is likely to possess child pornography."); *United States v. Guay*, 2001 WL 1571460, at *6 (D. Me. 2001)("In this case, the

---

[5] Defendant argues there is no probable cause to search Defendant's computers for evidence of the online chat since authorities already possessed transcripts of that chat. The Court agrees with the Government that a search of Defendant's computers for evidence of the chat is critical to the investigation since that information would strengthen the implication that Defendant perpetrated the chat.

10

underlying affidavit does not establish a link between the defendant's alleged sexual abuse of the three identified children and the possible existence of child pornography in his computer."). *But see United States v. Baker*, 2006 WL 2270739, at *5-*6 (D. Nev. 2006) (finding comparable link valid). To make a valid link between such conduct and possession of child pornography, the Sixth Circuit suggests that a supporting affidavit should include an opinion, by a trained and experienced officer, that persons who perpetrate sexual crimes against children are likely to possess child pornography. *See Adkins*, 169 Fed. Appx. at 967 ("But the affidavit [in the *Adkins* case] set forth other information on the likelihood of a molester's possessing pornography." [Specifically, the information in the affidavit explained that] "preferential offenders devote time, money, and energy to the pursuit of child pornography or sexual contact with children; that they typically keep collections of child pornography."). The Sixth Circuit explained that the "conjunction" of this opinion in the affidavit with evidence of sexual abuse "supports a finding that *Adkins* was reasonably likely to possess child pornography." *See id.*

In this case, Det. Pickrell identified Defendant as a "preferential offender" in testimony before this Court. She further testified that, in her experience, persons who sexually abuse children or engage in illicit online activity "always" have child pornography. Notably, however, Det. Pickrell omitted these opinions and insights from her Affidavit. Further, the Affidavit contains no reference to Det. Pickrell's qualifications or experience. While the potential inference between conduct and pornography is not an illogical one, it also is not self-evident. The Court is persuaded by *Adkins* that the child molestation and illicit online activity described in the Affidavit did not establish probable cause to believe Defendant possessed child pornography.[6] The scope of the search warrant–to the

---

[6] Certainly, a reviewing magistrate may make reasonable inferences based on common sense.

extent that it exclusively targets child pornography–is accordingly invalid.[7] This leads the Court to consider the *Leon* good faith exception.

      11.     In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that the exclusionary rule will not bar evidence seized in reasonable, good faith reliance on a search warrant subsequently determined to be invalid. *See Leon*, 468 U.S. at 905; *United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993). The Court believes and concludes that authorities did act in good faith, as defined by *Leon,* in pursuing this matter.

The police had credible evidence to believe that Defendant had engaged in child molestation and online sexual activity with a minor. Det. Pickrell testified that the nature and amount of evidence led her to suspect, based on her experience, that Defendant also possessed child pornography. This conjunction of information, according to the Sixth Circuit, would be sufficient to establish probable cause to suspect Defendant with possession of child pornography. *See Adkins*, 169 Fed. Appx. at 967.

---

As loathsome as "WhopperDaddy"'s chat content is, the Court is not equipped to supply an **empirical** link between sexual deviance, or even sexual attraction, and pornography possession. As *Adkins* suggests, such a link depends on expertise, which Det. Pickrell had and could have, but did not, supply to support the warrant application.

    [7]

     The Government suggests authorities would "inevitably" have discovered the illegal images on Defendant's computers because authorities had probable cause to search the computers for evidence of the illicit online chat. The warrant, through creative interpretation, may be read as extending to evidence of the chat, by seeking electronic or other matters such as "letters," "diaries," and "fantasy writings" serving "a sexual purpose for a given individual." However, the parties did not present adequate testimony to show that (or evaluate if) a valid search for those materials would also have netted *images* of child pornography. Further, the overwhelming focus of the warrant was child pornography, not chat material. The Court is not convinced on this record that, staying within the narrow confines of probable cause as presented by this warrant, authorities legitimately would have discovered and seized the subject images.

Det. Pickrell innocently failed to explain in the Affidavit that, based on her experience and the crimes involved, Defendant would likely possess child pornography. Although this omission undermines probable cause to support the targeted search warrant, the omission was not in bad faith or calculated to mislead the state judge. Under these circumstances, *Leon* should apply.

The Supreme Court identified four specific situations where the *Leon* "good faith" exception to the exclusionary rule would not apply:

> 1) where the supporting affidavit contained a knowing or reckless falsity;
>
> 2) where the issuing magistrate failed to act in a neutral and detached fashion, and served merely as a "rubber stamp" for the police;
>
> 3) where the supporting affidavit did not provide the magistrate with a substantial basis for determining the existence of probable cause, or in other words, the warrant application was supported by nothing more than a "bare bones" affidavit; or
>
> 4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable. *See Leon*, 468 U.S. at 914-15.

Defendant asserts that the second and third situations, identified above, preclude application of the *Leon* "good faith" exception to this case. After reviewing the record, the Court rejects Defendant's contentions.

Defendant first argues, under the third exception to *Leon*, that the supporting Affidavit in this case is essentially "bare bones" because the "four corners of the affidavit" do not relate "to the object of the search." The bare bones exception, cited by Defendant, removes a case from

13

*Leon* if the supporting affidavit does not provide the judicial officer with a "substantial basis" to determine the existence of probable cause. This standard is, by definition, *below* the probable cause threshold. Excluded "bare bones" affidavits contain only suspicions, beliefs, or conclusions, without providing some underlying factual circumstances to justify a warrant. *See United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005).

Although the supporting Affidavit in this case does not directly connect Defendant to child pornography, the Affidavit is not a bare conclusion or statement by Det. Pickrell that she believes probable cause exists. *See United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000). Instead of being "bare bones," the Affidavit includes straightforward evidence that Defendant engaged in both child molestation and illicit online activity with a putative minor. These suspected crimes are not as "unrelated" to child pornography as Defendant contends; both the cited conduct and the sought evidence involve sexual exploitation of minors. Indeed, the Affidavit information and Det. Pickrell's testimony would have established probable cause to link Defendant to the possession of child pornography. *See United States v. Adkins*, 169 Fed. Appx. 961, 967 (6th Cir. 2006). Det. Pickrell's failure to include her opinion as the critical link to establish probable cause does not reduce the Affidavit to mere suspicion or belief, under *Leon*.

In addition, at least one other federal court determined there was probable cause to search a suspect's residence for child pornography based *only* on the suspect's use of a computer to attempt to engage in sexual activity with a minor. *See United States v. Baker*, 2006 WL 2270739, at *5-*6 (D. Nev. 2006). Ultimately, *Adkins* persuades this Court that Det. Pickrell needed to include her opinions, insights, and expertise in the Affidavit to validate the warrant, but the

14

open-ended language in *Adkins* and the holding in *Baker* plainly demonstrate at least a substantial basis, for *Leon* purposes, to determine probable cause.

The Court also finds that the state judge did not act as a "rubber stamp" in this case. Det. Pickrell testified that the state judge reviewed the Affidavit before issuing the warrant. Although the warrant is no model of clarity, the cause supplied and testimony of independent judicial review leads the Court to conclude that the state court fulfilled its neutrality function. The "good faith" exception of *Leon* applies to this case.

### The effect of the unsigned jurat

12.     Defendant further observes that Det. Pickrell's supporting Affidavit bears only her signature. The state judge signed and issued the search warrant, but failed to sign and date the jurat affixed to the end of the supporting Affidavit. *See* Affidavit. On this basis, Defendant concludes that the Affidavit is unsworn and, consequently, the search warrant is invalid under the Fourth Amendment. *See* U.S. Const. amend. IV. ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation ....").

First, the Court rejects Defendant's summary conclusion that Det. Pickrell was not under oath simply because the jurat affixed to the Affidavit is unsigned. An unsigned acknowledgment is not conclusive on this matter. *See United States v. Henderson*, 2005 WL 3021982, at *3 (N.D. Iowa 2005)("[T]he fact that Judge Hoover-Grinde failed to acknowledge by her signature that Officer Joecken had been placed under oath does not establish that Officer Joecken was not in fact placed under oath."); *see also State v. Colon*, 644 A.2d 877 (Conn. 1994); *Powell v. State*, 355 So.2d 1378 (Miss. 1978); *State v. Keith*, 978 S.W.2d 861 (Tenn. 1998).

In this case, Det. Pickrell testified that the state judge placed her under oath before Det. Pickrell offered her Affidavit in support of probable cause for the warrant. She further explained that two separate warrant applications were before the judge that day, and suggested that the judge inadvertently overlooked the acknowledgment in the mix of paperwork. Det. Pickrell's testimony is credible and unchallenged. As such, the Court concludes that Det. Pickrell was under oath when she offered the Affidavit to the state judge. Additionally, the warrant application repeatedly refers to Det. Pickrell as "affiant," and the signed warrant references the "proof by affidavit having this day been made . . . by Det. Pickrell." *See* Affidavit; Warrant.

The record establishes compliance with the Fourth Amendment, despite the unsigned jurat. The Fourth Amendment guarantees that no warrant shall issue without probable cause supported by oath or affirmation, but the Fourth Amendment does not require the issuing judge to record or acknowledge that the affiant was under oath. *See United States v. Henderson*, 2005 WL 3021982, at *3 (N.D. Iowa 2005). Based on the testimony at the evidentiary hearing, the Court is satisfied that Det. Pickrell in fact was under oath. Under these circumstances, the unsigned acknowledgment does not impact the validity of the warrant. *See id*.

13.    Alternatively, the Court believes the *Leon* "good faith" exception would apply to this situation. The exclusionary rule is designed to deter police misconduct rather than the errors of judges and magistrates. *See United States v. Leon*, 468 U.S. 897, 916, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *United States v. Chaar*, 137 F.3d. 359, 361 (6th Cir. 1998).

Det. Pickrell's testimony reflects an innocent clerical error by the state judge in this matter. She testified that the judge consecutively evaluated two separate warrant applications at the time. Det. Pickrell believes the judge inadvertently overlooked the acknowledgment in her Affidavit

16

because of the amount or sequence of paperwork. Plainly, the purpose of the exclusionary rule, which is to deter police misconduct, does not fit with the facts of this case. *See United States v. Smith*, 63 F.3d 766, 769 (8th Cir. 1995)(applying *Leon* where "the jurat following the signature of [the agent] was not signed by the Magistrate Judge" because of "inapplicability of the exclusionary rule to clerical mistakes by judges"); *United States v. Richardson*, 943 F.2d 547, 550-51 (5th Cir. 1991)(deciding not to apply the exclusionary rule where a judge accidently failed to administer the oath because the rule's purpose of deterrence would not be served by penalizing the officer for the judge's mistake).

Defendant still contends that "no reasonable officer could possibly rely" on this search warrant because the unacknowledged Affidavit is a "fundamental flaw." The Court is unconvinced, however, that an unacknowledged Affidavit removes execution of the warrant from the *Leon* "good faith" exception because of the gravity or obviousness of such an error. Other federal courts have used the "good faith" exception where an affidavit was unsworn or unsigned. *See United States v. Hessman*, 369 F.3d 1016, 1019-23 (8th Cir. 2004); *United States v. Richardson*, 943 F.2d at 550-51; *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988). Here, Det. Pickrell did not even realize that the judge had failed to sign the jurat, and nothing suggests she should have been aware of the omission. This Court concludes that the circumstances of warrant issuance do not remove this case from *Leon.*

## RECOMMENDATION

For all the reasons stated, the Court recommends that the District Court deny the Motion to Suppress filed by the Defendant.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. By agreement of counsel, within five days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court, with any written responses thereto being filed within five days. *See* DE#20.

This the 13th day of December, 2006.

Signed By:
Robert E. Wier  REW
United States Magistrate Judge